14134

STATE v. SPENCER

(181 S. E., 217)

Mr. C. T. *Graydon,* for appellant,

*Mr. Samuel R. Watt, Solicitor,* for the State.

September 5, 1935.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

Appellant being charged with transporting and having in his possession alcoholic liquors containing in excess of one per cent. of alcohol, used as a beverage, employed Hon. C. T. Graydon, an attorney-at-law, practicing at Columbia, S. C., to defend him on said charges. The record discloses that appellant had sought the services of other attorneys prior to employing Mr. Graydon, but of this fact, Mr. Graydon had no knowledge at the time he agreed to defend the case.

Upon the convening of the Court of General Sessions for Cherokee County at the county seat, Gaffney, on the 18th day of March, 1935, a bill of indictment, containing two counts, in the manner and form as follows, was handed by the solicitor to the grand jury:

"At a Court of General Sessions, begun and holden in and for the County of Cherokee in the State of South Carolina, at Cherokee court house in the County and State aforesaid, on the third Monday of March in the year of our Lord one thousand nine hundred and thirty-five.

"3rd. And the Jurors aforesaid, upon their oath aforesaid, do further present,

"That Pink Davis and Grady Spencer at Cherokee Court House in the County of Cherokee and State aforesaid, on the 11th day of February in the year of our Lord one thousand nine hundred and 35, did wilfully and unlawfully receive, accept and have in his possession alcoholic liquors containing more than one per cent of alcohol and used as a beverage and if drunk to excess produces intoxication against the form of the statute in such case made and provided, and against the peace and dignity of the State.

"4th. And the Jurors aforesaid, upon their oath aforesaid, do further present,

"That Pink Davis and Grady Spencer at Cherokee Court House in the County of Cherokee and State aforesaid, on the 11th day of February in the year of our Lord one thousand nine hundred and 35, did wilfully and unlawfully transport and convey from place to place within this State alcoholic liquors used as a beverage, which contain more than one per cent of alcohol and which if drunk to excess produces intoxication against the form of the Statute in such case made and provided, and against the peace and dignity of the State.
                                    "SAMUEL R. WATT, *Solicitor.*"

On the same day the grand jury returned a true bill on said indictment.

On March 9, 1935, Hon. C. T. Graydon was commissioned as a Special Judge to hold a Court at Anderson, S. C., and acting under instructions from Hon. John G. Stabler, Senior Associate Justice, Acting Chief Justice (now Chief Justice), he proceeded to Anderson and there presided as the Judge of the Court in the place of Hon. W. H. Townsend, deceased, until Friday, March 15, 1935, when said Court at Anderson was recessed until Monday, March 18, 1935. It was on Saturday, March 16, that appellant employed Mr. Graydon. Immediately upon acceptance of the employment, Mr. Graydon advised Hon. Hayne F. Rice, the Circuit Judge scheduled to hold the Court at Gaffney, and the Judge who actually held the Court, of the conflict of engagements,

and requested a continuance of the case against appellant, also writing the solicitor, and sending him a copy of his letter to Judge Rice. Mr. Graydon returned to Anderson, S. C., and resumed his official duties of Special Judge on Monday morning, March 18. At about 11:30 o'clock a. m., on said last-mentioned day, Special Judge Graydon received a telegram from Hon. Sam R. Watt, solicitor, stating efforts on the part of appellant to procure a continuance of the case against him, and advising that he would insist on an immediate trial. Mr. Graydon forthwith advised the solicitor that he was actually engaged in holding Court and insisted upon a continuance of the case. Apparently after the solicitor sent the telegram to Mr. Graydon at Anderson and before receiving the telegram of Mr. Graydon, the solicitor, upon the grand jury returning a true bill, undertook to call the case for trial. After argument on the part of the solicitor, and a statement by the appellant, the presiding Judge advised appellant that he would not continue his case, for the term, but finally agreed to give him until Wednesday afternoon to either get Mr. Graydon there or to employ other counsel.

The trial work of the Court at Anderson was completed about 12 o'clock on Tuesday, March 19, and instead of remaining in Anderson for the purpose of signing orders and attending to other matters in connection with the holding of said Court, Mr. Graydon instructed that said orders and matters be sent him at Columbia, S. C., from which point he continued to perform the duties of a Circuit Judge, actually signing orders on March 20.

Early on the morning of March 20, Mr. Graydon again wired the solicitor insisting on a continuance of the case because of conflicting engagements, and the impossibility of making any preparation for the trial of the case, and in reply received a telegram reading as follows:

"Re wire it appears that you have finished your work as Judge in Anderson case of Spencer will be called for trial today. "SAM R. WATT."

While Mr. Graydon was making every effort to complete his duties as Special Judge, intending to go to Gaffney at the earliest moment, the case against appellant was again called for trial on Wednesday, March 20, at about 2:30 p. m., and over the protests of appellant, he having stated to the Court that he had spent such money as he had in the employment of Mr. Graydon and could not employ other counsel, the defendant was tried, convicted on the two counts of the indictment hereinabove set out, and sentenced, and at about 4 o'clock Mr. Graydon received a telegram from appellant, as follows:

"Tried and convicted sentenced two years bond twenty-five hundred dollars fix papers for appeal for new trial soon as possible.

"Grady Spencer."

The first five exceptions allege error, and abuse of discretion on the part of the trial Judge in ordering the case to trial under the circumstances hereinbefore set forth.

"It is established law in this state that the matter of continuance rests in the sound discretion of the presiding Judge, and his ruling will not be interfered with unless there is a clear showing of abuse of that discretion." *Edwards v. Union Buffalo Mills Co.*, 162 S. C., 17, 159 S. E., 818, 819.

"It is the established principle of this Court that a motion for continuance rests in the discretion of the judge to whom it is addressed. He who challenges the ruling must show that there has been an abuse of that discretion." *Merchants' F. & P. Co. v. American L. & B. Corp.*, 165 S. C., 394, 164 S. E., 17.

There can be no set and definite rule laid down governing continuances, but rather each motion or request for a continuance must necessarily depend upon all the surrounding circumstances, and when these circumstances are ascertained, it is then for the trial Judge to determine if justice demands or warrants a continuance.

In the instant case the defendant (appellant in this Court), was indicted on March 18, 1935. The crimes with which he was charged were misdemeanors. He was tried, convicted, and sentenced at the same term of Court, and within two days of the finding of a true bill against him. He had employed an able and outstanding attorney of this State to represent him. It was a presumption of law that he was innocent until convicted. His attorney, and he had only one, was from Monday, March 18, to Tuesday at about 12 o'clock engaged in actual trial work, and on Wednesday, March 20, the day on which defendant was tried, convicted, and sentenced, engaged in the signing of orders and attending to other of his official duties as Special Judge. In other words, his regularly employed counsel was performing the duties of an officer of this Court, public duties, at no doubt inconvenience and financial loss to himself. The witnesses against appellant were all officers of Cherokee County, therefore presumably residents of that county and easily obtainable for the purpose of testifying at the next term of the Court of General Sessions for said county.

Counsel for appellant cites in his printed argument the case of *Hopkins v. Smathers,* 114 S. C., 488, 104 S. E., 30, a much weaker case on the facts than the one at bar, in which this Court held that it was an abuse of discretion to refuse a continuance of a case in a County Court where counsel for the moving party was engaged in the trial of cases in the Court of General Sessions, a superior Court, although counsel actually appeared and represented his client in the trial in the County Court.

Where an attorney is acting under the orders of this Court and performing official duties of a public nature, he should be free from the annoyance of even the threat of a trial of his clients, so that his undivided attention may be given to the official duties to be performed.

We are constrained to hold that under the circumstances

of this case it was an abuse of discretion not to grant a continuance.

It is unnecessary, in view of the further holding of this Court, to pass upon the remaining exceptions raised by the appeal, and possibly it was unnecessary to pass upon any of the exceptions.

After the perfection of the appeal in this case, and the filing of the transcript of record, to wit, on May 14, 1935, a new temperance law for the State of South Carolina was approved (Acts of 1935, No. 232, p. 325).

Shortly before the oral argument of the cause, scheduled for hearing on the exceptions contained in the transcript of record, appellant's counsel filed and served a motion "to abate, dismiss, and discontinue" the cause on the ground that the enactment of the 1935 statute had the effect of repealing the statutory provisions under which the defendant was convicted and sentenced. This motion is resisted by the State and the matter came before the Court at the hearing of the appeal on the printed record.

The appellant's motion involves the consideration of three distinct questions:

(1) Is it competent for this Court to entertain a motion of the character in question, the granting of which would have the effect of dissolving the decree of the lower Court and ending the prosecution, despite the fact that the issue is one that could not have been, and therefore was not, presented in the lower Court, and is raised in this Court for the first time outside the printed record?

(2) Does the 1935 liquor law repeal the prohibition law of this State, or at least the sections under which the appellant was convicted?

(3) If the matter may properly be considered by the Court, and assuming that the 1935 statute effectually repeals the pre-existing prohibition law, will this Court adjudicate that the defendant's conviction and sentence of the lower Court are nullities?

(First). The question of the propriety of entertaining appellant's motion is a fundamental issue. Important considerations of public policy are involved. The view of the matter which would circumscribe the power of the Court with limitations preventing consideration of such a motion strikes at the very foundation of the judicial structure. To say that the highest Court of the State, charged with the duty to construe and apply the law of the State so as to preserve and protect the rights guaranteed by the Constitution, is without power to declare that by reason of a change in the law during the progress of the cause a defendant convicted in the criminal Courts may not properly be subjected to punishment because the effect of the change in the law has been to relieve him from his conviction, is to shackle the Court with a chain that is wholly inconsistent with its conception of its duty.

The crime for which the defendant was convicted is of purely statutory origin. The common law knew no such offense as that for which the defendant was tried. It was competent, however, for the Legislature to make the Act in question a crime. It did so. Subsequently, pursuant to the result of a state-wide referendum, the Legislature repealed (so it will be assumed for the purposes of the presentation of the present point), the law creating the crime. In effecting this repeal, it could have made provision to prevent the discontinuance of pending prosecutions for acts committed while the previous law was in force. That is a familiar legislative course. The failure to do so cannot be regarded as accidental or immaterial. The result is to leave the conviction of the appellant to the disposition of the Courts according to the accepted rules of statutory construction in such cases.

It was, of course, impossible for the point to be presented to this Court before the appellant's motion was served. To require the appellant, under such circumstances, to resort to some procedure in the lower Court would be to create a state

of uncertainty and possibly confusion for which there is no justification in the record.

If this Court were to conclude in any case of the present character that none of the appellant's exceptions as contained in the transcript of record present reversible error, that the present motion cannot be made in this Court for the first time, how would the appellant obtain an adjudication of the issue which he seeks to raise?

While no ruling is intended to be made to the effect that no other judicial course than that undertaken by the appellant here is open to him, a serious question is presented as to whether any other course could be found.

And it will be no sufficient answer to this view to state that a remedy would still lie by application for a pardon. A defendant convicted of crime is entitled to present to a judicial tribunal every issue of law and fact affecting his guilt and his liability to punishment for the alleged crime.

The precise question does not appear to have been presented in any case in this State, but the inherent justice of the view above indicated carries controlling weight.

The question, however, has been presented to the Supreme Court of the United States, and in the case of *Dorchy v. Kansas,* 264 U. S., 286, 290, 44 S. Ct., 323, 324, 68 L. Ed., 686, that tribunal found no difficulty in reaching the conclusion that under a similar state of facts it was proper for the Court to entertain consideration of the point at issue, raised for the first time in that Court.

In the case cited a judgment of conviction entered in the Supreme Court of Kansas was carried to the United States Supreme Court on a writ of *certiorari.* Under a decision of the last-named Court the statute under which the conviction had been obtained was declared unconstitutional after the conviction in the state Court. On its own motion, the United State Supreme Court took cognizance of this fact. It said, among other things: "This Court has power not only to

correct errors in the judgment entered below, but, in the exercise of its appellate jurisdiction, to make such disposition of the case as justice may now require. *Gulf, C. & S. F. R. Co. v. Dennis,* 224 U. S., 503, 506, 32 S. Ct., 542, 56 L. Ed., 860 [861]. *In determining what justice requires the Court must consider changes in law and in fact which have supervened since the judgment was entered below."* (Italics added.)

We are in accord with this view, and therefore hold that the motion in question is properly before the Court.

(Second). The 1935 liquor Act is defined in its title as one (a) to define alcoholic beverages; (b) to legalize and regulate the transportation, sale, possession, and use of alcoholic liquors; (c) to provide for .the licensing of the transportation and sale of alcoholic liquors, etc. The all-pervading scope of the Act as thus entitled is fully sustained by the terms of the statute. In respect to the matters referred to in the title, the Act sets up a system of regulation of all matters relating to the procurement by purchase or otherwise, and to the sale or other disposition and transportation of intoxicating liquors. It thus covers specifically and broadly the offenses of possession and transportation, with which the defendant was charged under the earlier law, and further covers by new regulations the alcoholic content of beverages permissible under the law. It is obviously impossible for the pre-existing law relating to the possession and transportation of beverages containing more than one per cent. of alcohol to stand alongside, as complementary to the 1935 Act which deals with the same subjects, and imposes entirely new rules as to every phase of the matter.

The Act expressly provides that "all Acts or parts of Acts inconsistent with the provisions of this Act are hereby repealed," and the Act is expressed to take effect immediately upon its approval by the Governor. There is no saving clause, and no other character of reference to pending prosecutions under the former law.

This Court is of the opinion that the 1935 statute clearly repeals all of the sections of the pre-existing prohibition law under which defendant's conviction could be supported.

From this holding it follows that the conviction of ■ the defendant should be vacated, for obviously, although judgment as entered in the lower Court has been set aside, the prosecution is still pending, and the impossibility of continuing that prosecution by further proceedings in the lower Court renders it necessary that the course indicated be decreed.

This view of the matter is fully sustained by decisions of the United States Supreme Court rendered under the National Prohibition Act (27 U. S. C. A.), since the repeal of the Eighteenth Amendment.

In the case of *United States v. Chambers,* 291 U. S., 217, 54 S. Ct., 434, 435, 78 L. Ed., 763, reported and annotated in 89 A. L. R., 1510, Chief Justice Hughes, writing the opinion of the Court, declared that although the crime involved in that cause had been committed while the national prohibition Act was in effect, the moment the effectiveness of the statute was destroyed, the prosecution was effectually terminated. "The continued prosecution necessarily depended upon the continued life of the statute which the prosecution seeks to apply. In case a statute is repealed or rendered inoperative, no further proceedings can be had to enforce it in pending prosecutions unless competent authority has kept the statute alive for that purpose."

In the annotation accompanying that case, the subject is interestingly dealt with, and the views expressed by Chief Justice Hughes are shown to be supported by the authorities of other jurisdictions.

It is true that in the *Chambers case* the defendant had not been convicted when the Eighteenth Amendment was declared repealed. But in the case of *Massey v. U. S.,* 291 U. S., 608, 54 S. Ct., 532, 78 L. Ed., 1019, decided about a month later than the *Chambers case,* it appeared that the de-

fendant had been convicted in May, 1932, following which a writ of *certiorari* was granted by the United States Supreme Court. In that case the Solicitor General of the United States, on his own motion, expressed to the Court his view that under the decision in the case of *United States v. Chambers, supra,* the prosecution should be abated, and his view was adopted by the Court, "with direction to vacate that part of its (District Court), judgment which sentences this petitioner, and to dismiss the indictment as to him."

(Third). The third question above suggested is answered by what has already been said on the first two questions, but it may be added that the principle here involved has been frequently stated and applied in both the State and Federal Courts. From an examination of the authorities, the authors of Ruling Case Law deduce the principle in the following terms: "It is with reference to statutes defining crimes and providing their punishment that repeals operate with the utmost freedom. In such cases the extinction of the statute is understood to be an indication that the sovereign power no longer desires the former crime to be punished or regarded as criminal. Therefore when such a statute is repealed, it is as if it never existed except for the purpose of proceedings previously commenced, prosecuted, and concluded, and even a plea of guilty before the repeal will not authorize the Court to pass sentence. * * * *If a penal statute is repealed pending an appeal or writ of error, and before the final action of the appellate Court, it will prevent an affirmance of a conviction, and the prosecution must be dismissed or the judgment reversed."* 25 R. C. L., pp. 941, 942. (Italics added.)

Our own Court has at least recognized the principle in the case of *State v. Thomas,* 14 Rich., 163, where a conviction for the larceny of a cow was set aside, upon a showing that the character and degree of the offense as fixed by the statute under which the defendant was convicted had been

changed by a later statute reducing the crime to a simple misdemeanor.

The case is, of course, only unlike those in which it appears that this Court has frequently held that a statutory change in the punishment for a crime does not have the effect of impairing a prosecution pending at the time of the enactment of the statutory change, except to the extent of the punishment to be imposed. The case of *State v. Mansel,* 52 S. C., 468, 30 S. E., 481, is an illustration of the application of that principle.

Here the situation is that the particular crime for which the appellant has been convicted is no longer among the category of crimes under our law.

Accordingly, it is ordered that the cause be remanded to the Court of General Sessions for Cherokee County, with direction to vacate the judgment and sentence entered against the appellant, and that the indictment under which the defendant was convicted be dismissed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and FISHBURNE concur.