### 15810

**STATE v. GILLIAM**

(37 S. E. (2d), 299)

*Solicitor Rufus Fant,* of Anderson, Counsel for Appellant,

*Mr. Ernest B. Castles,* of Anderson, Counsel for Respondent.

March 6, 1946.

Mr. Associate Justice Stukes delivered the majority Opinion of the Court.

Respondent was charged during the September, 1945, term of the Court of General Sessions for Anderson County upon an indictment as follows, omitting formal parts:

1. "* * * Albert Gilliam on the 28th day of May, 1945, in the County of Anderson and State of South Carolina, did willfully and unlawfully have in his possession alcoholic liquors which did not have South Carolina revenue stamps affixed to the container and containers thereof * * *"

2. "* * * Albert Gilliam on the 28th day of May, 1945, in the County of Anderson and State of South Caro-

lina, did willfully and unlawfully transport alcoholic liquors which did not have South Carolina revenue stamps affixed to the container and containers thereof * * *"

Section 1841 of the Criminal Code of 1942 reads as follows:

"It shall be unlawful for any person to purchase, or otherwise procure, within this State any alcoholic liquor other than that purchased from licensed dealers within the State as provided for in this article, and any persons found in possession of any bottle or other package containing alcoholic liquor without having affixed the revenue stamps thereto, as required by this article, either or both, shall be guilty of a misdemeanor and, upon conviction, for the first offense shall be fined not less than fifty ($50.00) dollars, nor more than two hundred ($200.00) dollars, or imprisoned not less than fifteen (15) days nor more than thirty (30) days; and, upon conviction for a second offense as provided in this section, shall be punished by imprisonment for not less than thirty (30) days."

And Section 1845, in part:

"It shall be unlawful for any person, firm or corporation to manufacture, store, keep, receive, have in possession, transport, ship, buy, sell, barter, or exchange, any alcoholic liquors except according to the provisions of this article."

The foregoing statutes are portions of the Act of 1935, 39 Stat., 325, by which the handling and sale of alcoholic liquors were legalized and regulated, a departure from the former long-standing policy of prohibition. That legislation was amended by Act No. 211 of 1945, 44 Stat., 337, but in the form of a new liquor code which contains the following provisions as section 26:

"Sections 1829 through 1856, inclusive, of the Code of laws of South Carolina, 1942, and all Acts or parts of Acts inconsistent with the provisions of this Act are hereby superseded, suspended and terminated, but all such sections, acts or parts of acts shall remain in force and effect insofar as

they apply to and support prosecution for any violation thereof occurring prior to the approval of this Act, and also for the collection and enforcement of all license taxes due and payable thereunder, and also for the collection and enforcement of the surety bonds filed by licensees under the provisions of Section 1833, and for the seizure, confiscation, forfeiture and sale of any property therein declared to be contraband, and also in connection with all licenses granted prior to the approval of this Act for the regulation of the licensees having such licenses."

The provisions of the 1945 Act which correspond with the former code sections 1841 and 1845 (quoted above) are found in section fourteen (44 Stat., at page 352) as follows:

"(a) It shall be unlawful for any person to manufacture, store, keep, receive, have in possession, transport, ship, buy, sell, barter, exchange or deliver any alcoholic liquors except in accordance with the provisions of this Act, except liquors acquired in a legal manner.

"(b) It shall be unlawful for any person to purchase, or otherwise procure, within this State any alcoholic liquor other than that purchased from licensed dealers within the State as provided for in this article, and any person found in possession of any bottle or other package containing alcoholic liquor without having affixed the revenue stamps thereto, either or both, shall be guilty of a misdemeanor."

Upon call of the case for trial, the respondent moved to quash the indictment upon the ground that sections 1841 and 1845 of the Code of 1942, under which the charges were brought, were "superseded, suspended and terminated on July 1, 1945, by Act No. 211" of that year as to offenses occurring subsequent to May 7th, the date of the approval of the Act by the Governor. It was conceded by the State that the charges were under the said sections of the 1942 Code and that the alleged offenses occurred on May 28th.

The trial judge granted the motion and quashed the indictment upon the cited authority of our decision in *State v. Spencer*, 177 S. C., 346, 181 S. E., 217. But we think

that decision is not controlling. The facts there presented were quite different. Prosecution was pending against Spencer under the former prohibition law when the radical departure from it embodied in the Act of 1935 (Chapter 86 of the Criminal Code of 1942, volume 1 of the Code, page 1035 *et seq.*), was enacted without any saving clause as to offenses committed prior to its approval. The rationale of the decision is contained in the following excerpt from the opinion of the Court: "It is obviously impossible for the pre-existing law relating to the possession and transportation of beverages containing more than one per cent. of alcohol to stand alongside, as complementary to the 1935 Act which deals with the same subjects, and imposes entirely new rules as to every phase of the matter." The marked difference in the facts of the cases is further illustrated by this additional quotation from that opinion: "Here the situation is that the particular crime for which the appellant has been convicted is no longer among the category of crimes under our law."

More nearly we have here the situation in contemplation of the Court when it said in the opinion as follows: "The case is, of course, only unlike those in which it appears that this Court has frequently held that a statutory change in the punishment for a crime does not have the effect of impairing a prosecution pending at the time of the enactment of the statutory change, except to the extent of the punishment to be imposed. The case of *State v. Mansel,* 52 S. C., 468, 30 S. E., 481, is an illustration of the application of that principle."

Consideration of the pre-existing laws contained in the Code of 1942 and the new liquor "code" embraced in the Act of 1945, 44 Stat., 337 (the relevant portions of both being set out above), is convincing that it was very far from the intention of the General Assembly to turn the liquor traffic loose and leave it unregulated for any period of time. The expression in the 1945 Act relating to the former laws, that they were thereby "superseded, suspended and terminated", negatives an intention to repeal them outright. Had

the latter been the intention, the usual and simple word "repeal" would surely have been used. And the positive provisions that the former laws "shall remain in force and effect insofar as they apply to and support prosecution for any violation thereof occurring prior to the approval of this Act," etc., show beyond doubt that they were intended to constitute a "saving clause" as such is ordinarily employed in the amendment or re-enactment of criminal statutes. The difficulty of the lower court arose from the plainly inadvertent use of the word "approval" in the quoted provision of section 26 of the Act of 1945 (44 Stat. at page 359) instead of the words "effective date". And it is quite easy to see how the Legislature fell into this error for the Act is unusual in providing a date that it should take effect (in its main provisions) subsequent to the date of executive approval.

Perusal of the annual volumes of the statutes shows the general practice by the Legislature of providing that its enactments shall take effect upon their respective dates of approval by the Governor. The very great majority of them so provide. It is noted that the Code of 1942, section 2079, provides that an act shall become effective on the 20th day after approval by the Governor unless it provides otherwise; hence the common practice of inserting in acts that they shall become effective upon approval.

Intoxicating liquor has been taxed, traffic in it regulated by law (and sometimes prohibited) for centuries. It would be most startling if it were tax-free and unregulated during any period of the applicability of twentieth century legislation, so surely such was foreign to the intention of the General Assembly in this instance; yet such is the result of the dcision of the lower court. This calls into play the principle which is well established in this and other courts that the choice of language, arrangement and grammatical construction of an act will not be construed with literality when that would defeat the manifest intention of the lawmakers, determined upon consideration of the entire act, related legis-

lation, facts and conditions. See the carefully reasoned decision (opinion by Mr. Justice Woods) of *Stackhouse v. Rowland*, 86 S. C., 419, 68 S. E., 561, from which the following is taken (supported by copious citations):

"However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature, or would defeat the plain legislative intention; and if possible will construe the statute so as to escape the absurdity and carry the intention into effect. The cardinal rule, that the courts should in all cases give effect to the obvious intent of the Legislature, and that every technical rule of construction should yield to the clear meaning of the statute, is stated in Endlich on Stat. Inter., sec. 295. Numerous cases in which clerical errors have been corrected by the courts pursuant to this principle are given in section 319 of the same work."

This rule of statutory construction was recently reviewed, reaffirmed and applied in *Greenville Baseball, Inc., v. Bearden, Sheriff*, 200 S. C., 363, 20 S. E. (2d), 813.

Moreover, in a situation such as the present where the later statute does not abolish the offense, but merely provides a different method of procedure for its prosecution, or prescribes a different punishment, the later statute is properly regarded as only a substitute for the earlier one and no indication is shown in such case of any change in attitude of the Legislature in regard to the criminality of the act; and in such cases no saving clause is necessary. 89 A. L. R., 1517.

Thus the General Assembly in this instance need not have inserted any saving clause in the Act of 1945 in order to preserve the criminality of possession or transportation of unstamped alcoholic liquors for such possession and transportation are illegal alike under the old and the new laws. Therefore it would be quite illogical and unreasonable to hold that having done the unnecessary and adopted a saving

clause, the Legislature nevertheless defeated its own plain purpose by the patently careless use of the word "approval" instead of the words "effective date", particularly when the occasion of the error clearly appears to be the unusual feature of the Act under which its effective date was a little later than the date of its approval by the Governor.

Two early, interesting cases upon the subject are found in our reports, in which the redoubtable James L. Petigru appeared as State's attorney. I refer to *State v. Cole,* 2 McCord 1, and *State v. Taylor, ibid* 483. In neither was a "saving clause" included in the new legislation.

In Cole's case a fine was exacted of him for nonperformance of militia patrol duties. Between the time of his dereliction and the proceeding against him a new law was enacted which altered the penalty and expressly purported to repeal the old law, which latter ours does not in the instant case. The court rejected the plea that the repeal clause in the later act excused the violation of the earlier one during its existence upon the grounds stated in part as follows: "The act of 1819, is only a re-enactment of the act of 1809, and the former acts, with some small alterations. It is a continuance of the same system of police which has been in operation for upwards of seventy-six years. There is no repugnancy in these acts; all of them require the performance of that duty which the Relator neglected to perform; all of them imposed a penalty on the non performance, and all of them recognize the old and long established jurisdiction, by which the fines are to be recovered."

*State v. Taylor, supra,* was concerned with the statutory crime of murder of a slave where the deed was committed prior to passage of a new act thereabout and prosecution afterwards. The new law increased the punishment and there was no express repeal (as in *Cole's case, supra*) of former laws. The prosecution was upheld and the court said: "*Cole's case,* quoted by the Attorney General, has, in my opinion, settled the law in this state. There the fines and penalties which had been incurred under the old patrol law

of 1746, were permitted to be recovered under it, notwith-standing there was a clause in the new patrol act of 1819, repealing all former acts repugnant thereto; because the clause in the new patrol act did not prevent the recovery of the fines under the old act nor did they consider such re-covery as repugnant to the terms of the new law. So, in like manner, I am of opinion that the punishment of an offender, under the old act of 1740, for murder, is not repugnant or inconsistent with the act of 1821, and that it would in this case be a denial of justice to refuse to let the case go to a jury of the country upon its merits."

A similar rule is found in North Carolina. A very per-tinent illustration is *State v. Perkins,* 141 N. C., 797, 53 S. E., 735, 9 L. N. S., 165, for it involved the liquor laws of that State. There was a license law in effect at the time of the alleged violation of it. Before trial, prohibition was enacted by a statute which contained an express repeal of "all laws and clauses of laws in conflict" with the new act *and no saving clause.* After a learned discussion, replete with citations of authority, the court concluded that the "re-pealed" statute was in effect for the trial and punishment of offenders whose violations occurred before enactment of the new law, even without the aid of a saving clause (which was unnecessarily attempted in our case). The report of the case in L. R. A. is followed by an approving annotation. It was commented that there was no unqualified repeal of the old law in the new (as there is not in our case), which if the legislature had intended it would have easily and unmis-takably inserted. Especially applicable to the present problem is the following from the opinion:

"The act of 1905 forbids the sale of liquor, and prescribes a much greater punishment than that fixed by the act of 1903 for selling liquor without a license; and its general features clearly indicate a purpose on the part of the legisla-ture to adopt more drastic measures for the suppression of the liquor traffic. Can it be reasonably supposed that, with this object in view and in its then frame of mind, it designed

to extend pardon and forgiveness to those who had violated the provisions of the former act? Why should we come to such a conclusion and give to the repealing clause of the act of 1905 the same meaning we would to words of unqualified repeal, which is so much at variance with the declared will of that body? Will it not be more reasonable and more likely to effectuate the intention of the legislature if we hold that the act of 1903 is still in force as to offenses already committed when the act of 1905 took effect, and to confine the latter act to its proper and legitimate sphere by applying it to offenses thereafter committed?"

There is an older North Carolina decision, *State v. Williams* (1895), 23 S. E., 250, in which opinion was by the afterward famous Chief Justice Walter Clark, where appellant was convicted of the statutory crime of intimidating a voter. The comment and decision of the Court were brief, as follows: "The defendant contends that, this section having been repealed by chapter 159, acts 1895, pending the appeal, the court has no jurisdiction. But said act, in section 41 thereof, re-enacts verbatim the provisions of Code, section 2715. The re-enactment by the legislature of a law in the terms of a former law at the same time it repeals the former law is not in contemplation of law a repeal, but is a reaffirmance of the former law, whose provisions are thus continued without any intermission. Bish. St. Crimes, section 181, *State v. Sutton,* 100 N. C., 474, 6 S. E., 687."

Nothing is found in the decisions of this Court subsequent to our early cases cited above which impeaches their authority. In *State v. Mansel,* 52 S. C., 468, 30 S. E., 481, the defendant went free because of the repeal of the statute after his violation, but in that case there was no substitution for the repealed law as in this case, which constituted a wholly dissimilar situation. Mansel's case is made clearer by one which followed in this court, *State v. Lewis,* 33 S. E., 351 (unreported in the State reports).

Upon comparison of the cases, striking similarity is seen between that before us and *State v. Williams,* 189 So., 112

122 A. L. R., 665, where the Louisiana legislature was guilty of a palpable oversight in the terms of the saving clause in the repeal and re-enactment (with slight change) of their highway regulatory law. Defendant appealed from conviction of injuring a person while operating an automobile when he was intoxicated, contrary to the terms of an act of 1936 but trial was after its express repeal without explicit inclusion of that act in the saving clause. The latter read: "This act shall in no way affect pending prosecutions in the Courts of the State, or violations under Act 48 of 1926 and Act 21 of 1932." The saving clause thus did not mention the Act of 1936 under which the defendant was prosecuted. Nevertheless the Court held that the act of 1936 was "saved" for the purpose of the prosecution and said: "It is possible, of course, to construe the saving clause in the repealing clause of the act of 1938 so that the Legislature, perhaps by inadvertence, saved only the right of the State to prosecute violaters of the act of 1926 or of the act of 1932, and not the right to prosecute a violator of the act of 1936, even though the prosecution was pending when the act of 1938 was adopted. But that construction is not only out of hamony with the letter of the law but is also violative of its spirit, because it is certain that the Legislature did not intend that the 'pending prosecutions' under the act of 1936 should be abated by the repealing clause in the act of 1938. We say this, because the act of 1938, in its title and in every section, is a literal copy of the act of 1936, with the addition of a section providing that all fines and forfeitures of bail of any person charged with a violation of the act shall be deposited in the Treasury of the State to the credit of the General Highway Fund. It is obvious, therefore, that the only object or purpose, and the only effect, of the act of 1938 was to make this provision for the benefit of the General Highway Fund. It was not intended that the act or 1938 should cause an abatement of all pending prosecutions under the act of 1936, all of the provisions of which are retained, literally, in the act of 1938."

Variations of the penalties provided in the old and new laws and their applicability to respondent in the event that he is convicted are, of course, not presently in issue.

The appeal of the State is sustained and the judgment reversed.

Remanded.

MESSRS. ASSOCIATE JUSTICES TAYLOR and OXNER concur. MR. CHIEF JUSTICE BAKER dissents. MR. ASSOCIATE JUSTICE FISHBURNE did not participate.

MR. ASSOCIATE JUSTICE OXNER (concurring) : I concur in the opinion of Mr. Justice Stukes and wish to add the following observation: "A statute speaks from the time when it takes effect." *Commonwealth v. Bennett,* 108 Mass., 30, 11 American Reports 304. Section 26 was not to take effect until July 1, 1945. Sections 1829 through 1856, inclusive, of the 1942 Code were, therefore, not "superseded, suspended and terminated" until July 1st, and were in effect on May 28, 1945, the date on which it is alleged the offenses were committed. For the reasons stated by Mr. Justice Stukes, no saving clause was necessary to support a prosecution for the offenses named in the indictment.

MR. ASSOCIATE JUSTICE TAYLOR concurs.

MR. CHIEF JUSTICE BAKER (dissenting) :

It is with regret that I am compelled to dissent from the opinion of Mr. Justice Stukes in this case.

The respondent, Albert Gilliam, was indicted for unlawfully having in his possession and transporting alcoholic liquors without having South Carolina revenue stamps affixed to the containers thereof, the offenses being alleged to have been committed on May 28, 1945.

Upon the call of the case, the respondent moved to quash the indictment, on the ground that on the date of the alleged offense there was no statutory law in force in this State governing the possession and transportation of alcoholic liquors, which motion to quash was granted by the learned Special Judge presiding. From this order the State has appealed.

At the 1945 session, by Act No. 211, the Legislature passed a new statute regulating the manufacture, sale, possession, transportation and use of alcoholic liquors, which had been covered and regulated by Chapter 86 of the Code of 1942 and, more specifically, Sections 1829-1956, inclusive, of said chapter. It was provided in Section 26 of Act No. 211 that "Sections 1829 through 1856, inclusive, of the Code of Laws of South Carolina, 1942, and all Acts or parts of Act inconsistent with the provisions of this Act are hereby superseded, suspended and terminated, but all such sections, acts or parts of acts shall remain in force and effect insofar as they apply to and support prosecution for any violation thereof occurring prior to the approval of this Act, * * *." Section 27 provides: "This Act shall take effect on July 1, 1945, except Sections 23 and 24, which shall take effect immediately upon approval by the Governor, and except as otherwise herein provided" (Sections 23 and 24 have no relation to the charge alleged in the indictment). This Act was approved the 7th day of May, 1945.

It will, therefore, be seen that the Legislature unwittingly suspended and terminated the existing law in reference to the manufacture, sale, possession, transportation and use of intoxicating liquors on the 7th day of May, 1945, and for the period between that date and the first day of July, 1945, there was no law against the possession and transportation of alcoholic liquors without having South Carolina revenue stamps affixed to the containers thereof.

I, of course, appreciate the fact that it was not the intent of the Legislature to have the State without a law regulating intoxicating liquors during this time, but this is what the Legislature plainly did and, it being a penal statute, the statute must be strictly construed.

I am unable to see the applicability of the cases cited by Mr. Justice Stukes in his opinion to the facts of this case, nor to follow his reasoning that the former statute had not been repealed by the 1945 statute. Legally speaking, I would

say that the words "suspended and terminated" have the same effect as though the word "repealed" had been used. Certainly this Court has neither the power nor the inclination to legislate, and this is what we would be doing if we held that the former statute law governing the possession and transportation of intoxicating liquors remained in effect after the Legislature said that such law was suspended and terminated.

In my opinion, the order of the trial Judge quashing the indictment should be affirmed.